UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

               Plaintiff,

     v.

TOYOTA MOTOR CORPORATION,
TOYOTA MOTOR NORTH AMERICA, INC.,
TOYOTA MOTOR SALES, U.S.A., INC., and
TOYOTA MOTOR ENGINEERING &
MANUFACTURING NORTH AMERICA, INC.,

               Defendants.

No. 21 Civ. 323 (DLC)

**CONSENT DECREE**

# TABLE OF CONTENTS

I.      RECITALS ............................................................................................................... 1
II.     JURISDICTION AND VENUE ............................................................................... 1
III.    ADMISSIONS ......................................................................................................... 2
IV.     APPLICABILITY .................................................................................................... 5
V.      DEFINITIONS ......................................................................................................... 5
VI.     CIVIL PENALTY .................................................................................................... 6
VII.    INJUNCTIVE RELIEF ............................................................................................ 7
VIII.   REPORTING REQUIREMENTS ........................................................................... 8
IX.     STIPULATED PENALTIES .................................................................................. 10
X.      FORCE MAJEURE ............................................................................................... 12
XI.     DISPUTE RESOLUTION ..................................................................................... 15
XII.    INFORMATION COLLECTION AND RETENTION ........................................... 17
XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ............................... 19
XIV.    COSTS ................................................................................................................... 20
XV.     NOTICES ............................................................................................................... 21
XVI.    EFFECTIVE DATE ............................................................................................... 22
XVII.   RETENTION OF JURISDICTION ....................................................................... 23
XVIII.  MODIFICATION ................................................................................................... 23
XIX.    TERMINATION ..................................................................................................... 23
XX.     PUBLIC PARTICIPATION .................................................................................. 24
XXI.    SIGNATORIES/SERVICE ................................................................................... 25
XXII.   INTEGRATION .................................................................................................... 25
XXIII.  FINAL JUDGMENT ............................................................................................. 25
XXIV.   APPENDIX ............................................................................................................ 26

## I.    RECITALS

1.    WHEREAS, plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint concurrently with this Consent Decree alleging that defendants Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales U.S.A., Inc., and Toyota Motor Engineering & Manufacturing North America, Inc. (collectively, "Defendants" or "Toyota") violated Section 203(a)(2) of the Clean Air Act ("Act"), 42 U.S.C. § 7522, and regulations promulgated at 40 C.F.R. §§ 85.1903 and 85.1904.

2.    WHEREAS, Toyota and the United States (together, the "Parties") recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

3.    NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II.    JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter of this action, pursuant to Sections 203, 204 and 205 of the Act, 42 U.S.C. §§ 7523, 7524 and 7525, and 28 U.S.C. §§ 1331, 1345 and 1355.

5.    For purposes of this Consent Decree and for purposes of enforcing the Consent Decree, the Parties agree that venue lies in this District pursuant to Sections 205 of the Act, 42 U.S.C. § 7524, and 28 U.S.C. § 1391(b) and (c).

6.     For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants and consent to venue in this judicial district.

7.     For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Section 203(a)(2) of the Clean Air Act ("Act"), 42 U.S.C. § 7522.

### III.    ADMISSIONS

8.     Toyota admits, acknowledges, and accepts responsibility for the following:

    a.     Between approximately 2005 and late 2015, Toyota routinely filed emission defect reports to EPA materially late and, in many cases, failed to file such reports at all until a self-disclosure of non-compliance in late 2015.

*Defect Reporting*

    b.     Automobile manufacturers such as Toyota are required to file Emissions Defect Information Reports ("EDIRs") with EPA no later than fifteen working days after specific emission-related defects are found to affect twenty-five vehicles or engines of the same model year.  40 C.F.R. § 85.1903(b).

    c.     "Emission-related defects" are broadly defined to include any "defect in design, materials, or workmanship in [1] a device, system, or assembly described in [the manufacturer's approved application for certification of the vehicle] that affects any parameter or specification enumerated in appendix VIII of [40 C.F.R. part 85]; or [2] one or more emission-related parts, components, systems, software or elements of design which must function properly to ensure continued compliance with emission standards."  40 C.F.R. § 85.1902(b).

    d.     EDIRs provide EPA a description of the defect, an evaluation of the emissions impact of the defect, and other information.  40 C.F.R. § 85.1903(c).  EDIRs are a source of information EPA may consider in deciding whether to influence a recall of vehicles or require a recall of vehicles pursuant to 42 U.S.C. § 7541(c)(1).

    e.     Automobile manufacturers such as Toyota are also required to submit Voluntary Emissions Recall Reports ("VERRs") to EPA within fifteen working days of the date of owner notification of a voluntary emissions

recall campaign involving twenty-five or more vehicles or engines, and to provide quarterly status reports ("Quarterly Reports") for six quarters commencing with the quarter after the recall campaign actually begins. 40 C.F.R. § 85.1904(a), (b).

f.  A "voluntary emissions recall" means a "repair, adjustment, or modification program voluntarily initiated and conducted by a manufacturer to remedy any emission-related defect for which direct notification of vehicle or engine owners has been provided." 40 C.F.R. § 85.1902(d).

g.  These regulations "extend . . . surveillance" of vehicles for emission-related defects "to . . . the manufacturers themselves" in light of EPA's intent "to encourage manufacturers to repair voluntarily emission-related defects which they determine to exist in vehicles or engines." 40 Fed. Reg. 18176, 18177-18178 (Apr. 25, 1975).

*Representations to EPA*

h.  In March and May 2002, at EPA's request, Toyota and EPA representatives met to discuss Toyota's internal process for identifying whether twenty-five instances of a specific emission-related defect exist in vehicles or engines of the same model year, requiring an EDIR filing.

i.  At a first meeting in March 2002, Toyota described its EDIR process in which Toyota would investigate whether it had twenty-five defects only upon receiving twenty-five "product reports" from its dealers, but would supplement that review by filing an EDIR upon receiving warranty claims for an emission-related part in 4% of Toyota's California fleet (a threshold requiring a separate filing to state authorities under California law).

j.  At the meeting, EPA rejected this EDIR process as not timely considering warranty claims, despite the incorporation of the 4% California trigger. Toyota's notes of the meeting indicate that EPA program staff advised Toyota that if it came back with a revised proposal that the program staff were convinced would satisfy the regulations, then EPA's enforcement arm would not need to get involved.

k.  Toyota then revised its process, noting internally that it "will be stricter than" California law.

l.  At a May 2002 meeting with EPA, Toyota presented its revised process. Under that process, Toyota would commence an investigation to determine whether an EDIR filing was required when it had received warranty claims for an emission-related part for 1% of relevant vehicles nationwide; when it received 500 such warranty claims regardless of the percentage; or when it received twenty-five similar early warning reports.

3

m.   Toyota noted internally that EPA seemed pleased with this approach, which EPA had described as "more stringent than California."

n.   In 2003, 2004, and 2005, as part of an annual review, Toyota submitted its May 2002 process in writing to EPA as an overview of its EDIR reporting program.

*Toyota's Conduct from Approximately 2005 to 2015*

o.   Without notifying EPA, in approximately 2005, Toyota stopped following the May 2002 EDIR process.

p.   In approximately 2005, Toyota began filing EDIRs primarily when filing the California reports triggered by the 4% threshold.  Toyota also filed EDIRs in a small number of instances when it was otherwise filing VERRs with EPA.

q.   From approximately 2005 to 2015, Toyota stopped making any independent determination of whether twenty-five defects existed requiring an EDIR filing.

r.   Multiple times during this period, Toyota staff charged with preparing EDIRs identified that the plain language of the EDIR regulations called for filing an EDIR upon the identification of twenty-five defects, but that Toyota was not doing so.  These staff did not cause Toyota to change its practice.

s.   As a result of this conduct, Toyota filed at least sixty-nine EDIRs materially late.  Thirty-nine of these were filed materially late in the ordinary course of Toyota's business.  In late 2015, Toyota self-disclosed another thirty that had not been filed at all.  Some EDIRs were ultimately filed as many as eight years after they were due.

t.   Beyond EDIRs, Toyota also failed during this period to file twenty VERRs required for emission-related recall campaigns that it conducted and failed to file more than two hundred Quarterly Reports related to such campaigns.

u.   Between 2005 and 2015, Toyota failed to provide its employees with adequate training, resources, or oversight to ensure that Toyota complied with its reporting obligations to EPA.

v.   As a result of Toyota's conduct, EPA did not timely receive mandated information regarding emission-related defects and recalls.

## IV.    APPLICABILITY

9.      The obligations of this Consent Decree apply to and are binding upon the United States, and (jointly and severally) upon Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

10.     Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree.  Defendants shall undertake reasonable best efforts to condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.  Defendants shall provide a Japanese translation of the Consent Decree along with the copy of this Decree, to any such officer, employee, agent, or contractor as necessary to facilitate the full implementation of this Decree.

11.     In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.  In such an enforcement action, the terms of the English language version of this Consent Decree shall control, regardless of whether the officer, director, employee, agent, or contractor was provided an inconsistent Japanese translation.

## V.    DEFINITIONS

12.     Terms used in this Consent Decree that are defined in the Act or in 40 C.F.R. part 85 shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a. "Complaint" shall mean the complaint filed by the United States in this action;

b. "Consent Decree" or "Decree" shall mean this Decree, including in all instances Appendix A hereto;

c. "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

d. "Defendants(s)" shall mean Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales U.S.A., Inc., and Toyota Motor Engineering & Manufacturing North America, Inc.;

e. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

f. "Effective Date" shall have the definition provided in Section XVI (Effective Date).

g. "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

h. "Parties" shall mean the United States and Defendants;

i. "Section" shall mean a portion of this Decree identified by a Roman numeral; and

j. "United States" shall mean the United States of America, acting on behalf of EPA.

## VI. CIVIL PENALTY

13. Within 30 Days after the Effective Date, Defendants shall pay the sum of $180,000,000 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

14. Defendants shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to Defendants by the U.S. Attorney's Office for the Southern District of New York. The payment

instructions will include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree.

15.     At the time of payment, Defendants shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268, and to the United States via email and regular mail in accordance with Section XV (Notices).  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Toyota Motor Corporation, et al.*, and shall refer to the civil action number, CDCS Number, and DOJ case number 90-5-2-1-11477.

16.     Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section IX (Stipulated Penalties) in calculating its federal or state income tax.

17.     For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of obligations incurred under Paragraphs 10, 18, 19, 20, 21, 53, 54, and 55 and Appendix A is restitution or required to come into compliance with the law.

## VII.    INJUNCTIVE RELIEF

18.     Defendants shall comply with 40 C.F.R. § 85.1903 (Emissions Defect Information Reports).

19.     Defendants shall comply with 40 C.F.R. § 85.1904 (Voluntary Emissions Recall Reports and Quarterly Reports).

20.     Defendants shall comply with Appendix A (Specific Defect Reporting and Investigation Protocols).

## VIII.   REPORTING REQUIREMENTS

21.     Defendants shall submit the following reports:

      a.     *Semi-Annual EDIR Investigations Report.*  Defendants shall submit the Semi-Annual EDIR Investigations Report, described in Appendix A, Paragraph 7.

      b.     *Annual Recall Report.*  Defendants shall submit the Annual Recall Report, described in Appendix A, Paragraph 9.

      c.     *Semi-Annual Compliance Report*.  No later than January 30 and July 30 of each year (but in no event earlier than six months after entry), until termination of this Decree pursuant to Section XIX  (Termination), Defendants shall submit by email and U.S. Mail pursuant to Section XV (Notices) a semi-annual report for the preceding two calendar quarters that shall include the status of Defendants' compliance with this Consent Decree (including Appendix A).  The report shall also include a summary description of any non-compliance with the requirements of this Consent Decree (including Appendix A) and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

      d.     *Report of Violations.*  If Defendants violate, or have reason to believe that they may violate, any requirement of this Consent Decree, Defendants shall notify the United States of such violation and its likely duration, in writing, within fourteen Days of the Day Defendants first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendants shall so state in the report.  Defendants shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendants become aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligations to provide the notice required by Section X (Force Majeure).

22.     Whenever any violation of this Consent Decree or any other event affecting Defendants' performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendants first knew of the

violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

23.     All reports under the Consent Decree shall be submitted to the United States by email and U.S. Mail as designated in Section XV (Notices), except that Emission Defect Information Reports, Voluntary Emissions Recall Reports, and Quarterly Reports required under 40 C.F.R. §§ 85.1903 and 85.1904 shall be submitted only by the methods established by EPA for the submission of such filings generally.

24.     Each report submitted by Defendants under Paragraphs 22 and 23 of this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

25.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

26.     The reporting requirements of this Consent Decree (including Appendix A) do not relieve Defendants of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

27.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## IX.    STIPULATED PENALTIES

28.    Defendants shall be jointly and severally liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure).  The joint and several liability may be satisfied by payment of any Defendant.  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

29.    *Late Payment of Civil Penalty.*  If Defendants fail to pay the civil penalty required to be paid under Section VI (Civil Penalty) when due, Defendants shall pay a stipulated penalty of $50,000 per Day for each Day that the payment is late.

30.    Injunctive Relief.

a.    The following stipulated penalties shall accrue per violation per Day for each violation of the requirements identified in subparagraph 30.b:

| *Penalty Per Violation Per Day* | *Period of Noncompliance* |
|---|---|
| $5,000 | 1st through 20th Day |
| $10,000 | 21sth through 40th Day |
| $20,000 | 41st Day and beyond |

b.    The applicable compliance requirements for the purpose of this paragraph are the following:

(1)    Paragraph 18

(2)    Paragraph 19

(3)    Appendix A, paragraphs 3, 4, 5, 6, 8, and 10, including the subparagraphs under each.

10

31.     *Reporting Requirements.*  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VIII (Reporting Requirements) and Appendix A, paragraphs 7 and 9, including subparagraphs under each:

| *Penalty Per Violation Per Day* | *Period of Noncompliance* |
|---|---|
| $2,000 | 1st through 20th Day |
| $5,000 | 21th through 40th Day |
| $10,000 | 41st Day and beyond |

32.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases; provide that no stipulated penalties will accrue prior to the Effective Date.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

33.     Defendants shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.  The written demand for payment of stipulated penalties shall identify the violation.

34.      The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

35.     Stipulated penalties shall continue to accrue as provided in Paragraph 32, during any Dispute Resolution, but need not be paid until the following:

    a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

    b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

11

      c.     If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

36.     Defendants shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 14 and with the confirmation notices required by Paragraph 15, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

37.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

38.     The payment of penalties and interest, if any, shall not alter in any way Defendants' obligation to complete the performance of the requirements of this Consent Decree.

39.     *Non-Exclusivity of Remedy.*  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendants' violation of this Decree or applicable law, including but not limited to an action against Defendants for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## X.    FORCE MAJEURE

40.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or

of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure event, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

41.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendants shall provide notice orally or by e-mail to the United States as set forth in Section XV (Notices), within seven Days of when Defendants first knew that the event might cause a delay. Within fourteen Days thereafter, Defendants shall provide in writing to the United States an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be

deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

42.     If the United States agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by the United States for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  The United States will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

43.     If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, the United States will notify Defendants in writing of its decision.

44.     If Defendants elect to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), they shall do so no later than 30 Days after receipt of EPA's notice.  In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 40 and 41.  If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to the United States and the Court.

## XI.    DISPUTE RESOLUTION

45.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Decree.

46.    *Informal Dispute Resolution.*  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendants send the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

47.    *Formal Dispute Resolution.*  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States in accordance with Section XV (Notices) a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

48.    The United States shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position.  The United States' Statement of Position shall include,

but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

49.    Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XV (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 30 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

50.    The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

51.    Standard of Review

   a.    *Disputes Concerning Matters Accorded Record Review.* Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 47 pertaining to disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

   b.    *Other Disputes.* Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 47, Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree.

52.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 35.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII.   INFORMATION COLLECTION AND RETENTION

53.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

    a.      monitor the progress of activities required under this Consent Decree;

    b.      verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

    c.      obtain documentary evidence, including photographs and similar data; and

    d.      assess Defendants' compliance with this Consent Decree.

To the extent the provisions of this paragraph relate to information and personnel located in Japan, the Parties acknowledge that the applicability of this paragraph will be subject to the applicable laws and legal principles of Japan.

54.     Until five years after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and that materially relate to

17

Defendants' performance of their obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.  Nothing in this Paragraph shall apply to any documents in the possession, custody, or control of any outside legal counsel retained by Defendants in connection with this Consent Decree or of any contractors or agents retained by such outside legal counsel solely to assist in the legal representation of Defendants.

55.      At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendants shall deliver any such documents, records, or other information to EPA.  Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendants assert such a privilege, they shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendants.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

56.      Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. part 2.  As to

any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. part 2.

57.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

58.     This Consent Decree resolves the civil claims of the United States alleged in the Complaint filed in this action through the date of lodging.

59.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, notwithstanding Paragraph 58.

60.     This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 58.

61.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 58.

62. This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act or with any other provisions of federal, State, or local laws, regulations, or permits.

63. This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

64. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIV.   COSTS

65. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XV.   NOTICES

66.     Unless otherwise specified in this Decree, whenever notifications, submissions, or

communications are required by this Consent Decree, they shall be made in writing and

addressed as follows:

As to the United States by email:    robert.yalen@usdoj.gov
dominika.tarczynska@usdoj.gov
jennifer.jude@usdoj.gov
eescdcopy.enrd@usdoj.gov
Re: DJ # 90-5-2-1-11477

and

tozzi.lauren@epa.gov
belser.evan@epa.gov
kaul.meetu@epa.gov

As to the United States by mail:    Robert Yalen
Dominika Tarczynska
Jennifer Jude
U.S. Attorney's Office
Southern District of New York
86 Chambers St., 3rd Floor
New York, NY 10007

EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DJ # 90-5-2-1-11427

and

Director, Air Enforcement Division
1200 Pennsylvania Avenue NW
William J Clinton South Building
MC 2242A
Washington, D.C. 20460

As to Defendants by email:    sandra.phillips@toyota.com
elizabeth.gibson@toyota.com
kim.udovic@toyota.com
hcantwell@debevoise.com
rludwiszewski@gibsondunn.com
gnakayama@kslaw.com

As to Defendants by mail:    Sandra Phillips Rogers
Elizabeth Gibson
Kim Udovic
Toyota Motor North America
6565 Headquarters Drive
Plano, TX 75024

Helen V. Cantwell
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

Raymond B. Ludwiszewski
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

Granta Nakayama
King & Spalding LLP
1700 Pennsylvania Avenue, NW, 2nd Floor
Washington, DC 20006

67.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

68.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI.   EFFECTIVE DATE

69.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVII.  RETENTION OF JURISDICTION

70.     The Court shall retain jurisdiction over this case until termination of this Consent

Decree, for the purpose of resolving disputes arising under this Decree or entering orders

modifying this Decree, pursuant to Sections XI (Dispute Resolution) and XVIII (Modification),

or effectuating or enforcing compliance with the terms of this Decree.

## XVIII. MODIFICATION

71.     The terms of this Consent Decree may be modified only by a subsequent written

agreement signed by all the Parties.  Where the modification constitutes a material change to this

Decree, it shall be effective only upon approval by the Court.

72.     Any disputes concerning modification of this Decree shall be resolved pursuant to

Section XI (Dispute Resolution), provided, however, that, instead of the burden of proof

provided by Paragraph 51, the Party seeking the modification bears the burden of demonstrating

that it is entitled to the requested modification in accordance with Federal Rule of Civil

Procedure 60(b).

## XIX.  TERMINATION

73.     After Defendants have maintained continuous satisfactory compliance with this

Consent Decree for a period of three years, and have paid the civil penalty and any accrued

stipulated penalties as required by this Consent Decree, Defendants may serve upon the United

States a Request for Termination, stating that Defendants have satisfied those requirements,

together with all necessary supporting documentation.

74.     Following receipt by the United States of Defendants' Request for Termination,

the Parties shall confer informally concerning the Request and any disagreement that the Parties

may have as to whether Defendants have satisfactorily complied with the requirements for

termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

75.     If the United States does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section XI (Dispute Resolution).  However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until ninety Days after service of their Request for Termination.

76.     The Parties agree that, notwithstanding the termination provided for under this Section XIX, Toyota's obligations under Appendix A, Paragraph 7 (Semi-Annual EDIR Investigations Report) and Appendix A, Paragraph 9 (Annual Recall Report) shall continue until four years and six months after the Effective Date, and non-compliance therewith will be subject to stipulated penalties as provided herein.  Any stipulation or termination order under this Section shall reflect the continuation of these obligations for four years and six months after the Effective Date when these obligations automatically terminate by their own terms.

## XX.   PUBLIC PARTICIPATION

77.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XXI. SIGNATORIES/SERVICE

78.     Each undersigned representative of Defendants and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

79.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXII. INTEGRATION

80.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.

## XXIII. FINAL JUDGMENT

81.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.

## XXIV. APPENDIX

82.     The following appendix is attached to and part of this Consent Decree:  Appendix

A – Specific Defect Reporting and Investigation Protocols.

Dated and entered this 2nd day of _____April_____, 2021

```
        _____
                 DENISE COTE
        United States District Judge
```

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Toyota Motor Corporation, et al.*

**FOR THE UNITED STATES OF AMERICA**:

1/13/21
Date

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

By:

ROBERT WILLIAM YALEN
DOMINIKA TARCZYNSKA
JENNIFER A. JUDE
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Telephone: (212) 637-2722/2748/2663
Fax: (212) 637-2686
robert.yalen@usdoj.gov
dominika.tarczynska@usdoj.gov
jennifer.jude@usdoj.gov

1/13/21
Date

JEFFREY BOSSERT CLARK
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources
Division

27

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Toyota Motor Corporation, et al.*

**FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY**:


1-13-21
_____
Date

Susan Parker Bodine

SUSAN PARKER BODINE
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

ROSEMARIE A. KELLEY
Director, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania A venue, N. W.
Washington, DC 20460

THOMAS P. CARROLL
Acting Director, Air Enforcement Division
EVAN BELSER
Deputy Director, Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

LAUREN TOZZI
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Toyota Motor Corporation, et al.*

**FOR DEFENDANTS**:

1/13/21
Date

CHRISTOPHER P. REYNOLDS
Executive Vice President and
Chief Administrative Officer,
Toyota Motor North America;
Deputy Chief Officer, General
Administration & Human
Resources Division, Global Risk
Toyota Motor Corporation
6565 Headquarters Drive
Plano, TX 75024

**APPENDIX A –**
**SPECIFIC DEFECT REPORTING**
**AND INVESTIGATION PROTOCOLS**

1.    <u>General Provisions</u>

    a.    Defendants shall comply with (or continue to comply with, to the extent already in place) the requirements of this Appendix with respect to motor vehicles and motor vehicle engines subject to 40 C.F.R. § 85.1901(a).

    b.    This Appendix is not intended to reflect an exhaustive list of actions necessary or appropriate for Defendants to take to comply with 40 C.F.R. part 85, subpart T, and the Consent Decree.  Nothing in this Appendix removes Defendants' obligation to take such other steps as may be necessary to comply with 40 C.F.R. part 85, subpart T, and the Consent Decree.  Nothing in this Appendix prevents Defendants from taking additional steps consistent with 40 C.F.R. part 85, subpart T, and the Consent Decree, that Defendants deem appropriate to support its defect reporting program.

2.    <u>Definitions</u>

    a.    Section V of the Consent Decree (Definitions) applies to this Appendix.

    b.    The following additional definitions also apply to this Appendix:

    (1)    "Affected Units in Operation" is the number of vehicles or engines of the same model year that may contain a specific Emission-Related Defect.

    (2)    "EDIR Determination" is the determination whether or not a "specific emission-related defect exists in twenty-five or more vehicles or engines of the same model year," within the meaning of 40 C.F.R. § 85.1903(a)(2).

    (3)    "EDIR Investigation" is Defendants' collection and evaluation of information to make an EDIR Determination.

    (4)    "Emission-Related Defect" has the meaning provided in 40 C.F.R. § 85.1902(b).

    (5)    "Emission-Related Component" means any device, system, assembly, emission-related part, component, system, software or element of design referred to in 40 C.F.R. § 85.1902(b)(1) and (2).

    (6)    "Failure Rate" means the percentage of the Affected Units in Operation that are projected to manifest signs of a specific Emission-Related Defect during operation during their Useful Life.

(7)     "Field Reports" means Toyota Field Technical Reports and Toyota Dealer Product Reports (or any successor report that may be used by Toyota during the term of the Consent Decree) that describe the results of an investigation into an issue involving an Emissions-Related Component on a vehicle that has been sold or delivered for sale. The investigation may have been conducted by the Defendants or by personnel at an authorized dealership.

(8)     "Recall" means any program of repair, adjustment, or modification to vehicles or engines conducted by a manufacturer to remedy any defect for which direct notification of vehicle or engine owners is provided, including but not limited to "voluntary service campaigns" or warranty extensions.

(9)     "Useful Life" shall have the meaning provided by 40 C.F.R. § 85.1902(c).

3.     <u>EDIR Investigations</u>

a.     Defendants shall commence an EDIR Investigation when they have reason to believe based on information available to any Defendants, including but not limited to warranty claims, reports from dealers, consumer complaints, and internal engineering analyses, that a specific Emission-Related Defect may exist in twenty-five or more vehicles or engines of the same model year.

b.     To the extent that an EDIR Investigation for a potential Emission-Related Defect has not yet been commenced, Defendants shall commence an EDIR Investigation upon the occurrence of the earliest of the following:

(1)     Receipt by Defendants of unscreened warranty claims for a specific Emission-Related Component in 1% of the vehicles or engines of the same test group and model year.

(2)     Receipt by Defendants of unscreened warranty claims for a specific Emission-Related Component in 500 vehicles or engines of the same test group and model year.

(3)     Receipt by Defendants of twenty-five Field Reports for a specific Emission-Related Component in vehicles or engines of the same test group and model year with the same reported symptom.

(4)     Issuance by Defendants of a Technical Service Bulletin regarding a Emission-Related Component.

c.     If, as a result of Defendants' EDIR Investigation, Defendants conclude that an EDIR need not be filed at that time, they shall, for five years from the end of the model year in which the vehicles or engines were manufactured, continue to monitor the Emission-Related Defect and supplement the EDIR Investigation (i) as new information becomes available and (ii) upon the occurrence of the events described in paragraph 3(b)(1)-(4).

d.      Defendants shall conduct EDIR Investigations promptly and avoid delay in any root cause analysis or other necessary engineering analysis.

e.      In determining the number of vehicles or engines of the same model year with the same Emission-Related Defect, Defendants shall make reasonable estimates based on all available information, including but not limited to returned parts, customer complaints, and engineering or maintenance data or reports.  Defendants shall not limit their analysis to those instances in which Defendants received returned parts from dealers.

4.      EDIR Filing and Content

a.      Defendants shall file an EDIR not more than 15 working days of an EDIR Determination that a specific Emission-Related Defect exists in twenty-five or more vehicles or engines of the same model year.

b.      In addition to the information required by 40 C.F.R. § 85.1903(c), Toyota shall include in every EDIR any additional information of that would be required by a defect report filing under 40 C.F.R. § 1068.501(d).

c.      In each EDIR, Defendants shall also include their best estimate, and the methodology used to reach that estimate, of the following:

(1)      Affected Units in Operation;

(2)      Failure Rate; and

(3)      The impact on emissions during operation of an unrepaired vehicle manifesting signs of a specific Emission-Related Defect when compared to a normally functioning vehicle that does not exhibit the Emission-Related Defect.

5.      EDIR Staffing

a.      Defendants shall ensure that staff conducting EDIR Investigations, making EDIR Determinations, and drafting EDIRs are properly trained and qualified and are given access to all relevant information and analyses. Without limitation, Defendants shall ensure that such staff are trained at least annually on EDIR reporting requirements and the applicable requirements of this Appendix A and have and make use of appropriate engineering expertise and information.

6.      EDIR Process Communications with Recall Staff

a.      Defendants shall ensure that staff responsible for determining whether to conduct a recall ("Recall Staff") are notified within fifteen working days of the results of any EDIR Investigation or EDIR Determination.

b.      Defendants shall ensure that staff responsible for conducting any EDIR Investigation or making any EDIR Determination are authorized and encouraged to communicate directly with Recall Staff.

7.      <u>Semi-Annual EDIR Investigations Report</u>

a.      No later than April 30 and October 31 of each year (but in no event earlier than six months after entry), Defendants shall submit a report on the status of all EDIR Investigations commenced, continued, or concluded during the two preceding calendar quarters.  The report shall include:

(1)      Identification of each EDIR Investigation that Defendants commenced, continued, or concluded during prior year, including the applicable part number(s) and description of the Emission-Related Component(s) being investigated as well as a description of the  potential Emission-Related Defect(s);

(2)      The date the EDIR Investigation commenced;

(3)      To the extent that the EDIR Investigation commenced because of the occurrence of an event listed in paragraph 3(b)(1)-(4) above, a description of the event and the date on which it occurred;

(4)      The status of each such EDIR Investigation (open, closed, or monitoring);

(5)      A description of the potentially affected vehicles, including engine family, model, model year, and number of vehicles;

(6)      An estimate of Affected Units in Operation and Failure Rate for each Emission-Related Defect, an explanation how this number was determined, and whether these estimates remains under investigation;

(7)      Whether an EDIR was filed and if so on what date;

(8)      If the EDIR Investigation was closed or continued more than 30 Days without filing an EDIR report, the reasons for such action; and

(9)      The date the EDIR Determination was reported to recall staff pursuant to paragraph 6(a) above.

b.      This report shall be submitted to the United States pursuant to Section XV (Notices); by email to wehrly.linc@epa.gov and ball.joel@epa.gov; and by mail National Vehicle and Fuel Emissions Laboratory, Attention: Light-Duty Vehicle Compliance Center, 2000 Traverwood Drive. Ann Arbor, MI 48105.

8.      Recalls, VERRs & Quarterly Reports

        a.      Defendants shall ensure that prior to commencement of any Recall (whether or not related to an Emission-Related Defect) that appropriate Toyota staff will determine whether such Recall is a "voluntary emissions recall," within the meaning of 40 C.F.R. § 85.1902(d), involving twenty-five or more vehicles or engines, such that the filing of VERRs and Quarterly Reports will be required pursuant to 40 C.F.R. § 85.1904.

        b.      Defendants shall ensure that staff responsible for making the determination referred to in paragraph (a) are properly trained and qualified to make that determination.

        c.      Toyota shall file all required VERRs and Quarterly Reports by the deadlines stated in 40 C.F.R. § 85.1904.

9.      Annual Recall Report

        a.      Six months after the entry of this Consent Decree, and thereafter on April 30 of each year, Defendants shall submit a status report including the following information:

                (1)     An identification of each Recall commenced after the Effective Date of the Consent Decree;

                (2)     A statement whether such Recall is a "voluntary emissions recall campaign involving twenty-five or more vehicles or engines" within the meaning of Section 85.1904;

                (3)     If so, the date that a VERR was filed or the anticipated future date that a VERR will be filed, and the dates of any Quarterly Reports filed as of that date; and

                (4)     If not, the basis for so concluding.

        b.      This report shall be submitted to the United States pursuant to Section XV (Notices) and by email to wehrly.linc@epa.gov and ball.joel@epa.gov; and by mail National Vehicle and Fuel Emissions Laboratory, Attention: Light-Duty Vehicle Compliance Center, 2000 Traverwood Drive. Ann Arbor, MI 48105.

10.     Oversight and Coordination

        a.      With regard to Emission-Related Defects:

                (1)     Defendants shall ensure that oversight systems are in place to encourage quality, correct deficiencies, ensure accountability, and identify areas for improvement of Defendants' defect investigations and reporting.

                (2)     Defendants shall ensure that staff members assigned roles in the defect investigation, defect reporting, and recall processes are informed in writing

of the steps they are expected to perform and acknowledge their responsibility
therefor.

(3)     To the extent that Defendants' responsibility for the defect
reporting process is distributed to different components within or among the
Defendants, Defendants shall establish an Emission-Defect Reporting Control
Group to coordinate among and insure adequate communication between the
several components.